Good morning, and may it please the court. This case concerns a gender-based differential in the law governing one's appearance within the city of Springfield. Plaintiff Spring, an equal protection challenge to the portion of Springfield's ordinance that makes it a crime for girls or women. Yes. You have, there are two named plaintiffs, right? Both adult females, right? Yes. Thank you. Yes. But, you know, they do have daughters, and as the... They're not parties to this case, are they, counsel? In Morales-Santana, the Supreme Court has a whole section about standing to bring equal protection claims. In that case... No, I ask a simple question. They're not parties. Oh, they are not parties. Thank you. But their mothers can raise their third-party... Sure. ...claims on behalf of them. In Morales-Santana, the person who was actually the father of the immigrant, who was treated differently because he was a man, could not bring a claim on his own because he was dead. So his son was allowed to bring it through him. That's analogous to allowing a mother to bring a claim for a child who's not capable of bringing a suit themselves. So this case is not about the legitimacy of prohibiting the exposure of nipples or chest or any other body part. Rather, it's about the differential treatment that makes the same action lawful. If it engaged in by a man or a boy, any legal engaged in by a girl. And about whether the city may impose a duty of modesty on women while allowing men to make their own judgment. So what about the last phrase of the statute? The turgeon part of the statute. The turgeon part? Yeah. Actually, I think that could be no plaintiff at standing to raise that. Right. It is a gender-based differential as well. Right. And could be challenged. I think it highlights, though, exactly what the problem is with the portion that we're challenging. And that is that it assumes that female nipples are inherently sexual. Counsel, wouldn't to do what you're asking us to do today, would we not have to overrule our Ways decision from Nebraska? No. I do not believe you would have to overrule Ways for two ways. Well, first of all, in a gender-based classification, when those are judged, they have to substantially serve an important government interest today. The Supreme Court said that in is because the courts have, again as the court said, recognized the new insights and societal understandings can reveal unjustified equality that once passed unnoticed and unchallenged. So I think that there's an equal protection challenge for gender-based differentials. You always have to look at whether the discrimination is necessary today. So one distinction is... What's different is not... What the biggest difference is there's evidence in this case that was not present in Ways. So if the evidence in this case, if the facts were the same, then Ways would control. But the way we apply precedent generally would keep a panel from being able to overrule a prior panel decision. And you're essentially then hoping for in-bank review to address the existing precedent. Well, right. I mean, I do believe Ways was wrongly decided, but we think that this case is distinguishable. Even when, you know, last summer in Comprehensive Health v. Hawley, this court found that the district court erred in granting a preliminary injunction based on the whole women health case because it didn't consider the facts in the record. Even though there was a Supreme Court case from maybe two years earlier, it was a very similar law. The court still had, the district court still had a duty to look at the facts in the record to see if they were the same, to see if Missouri was the same as Texas. What facts are different here? What's in the record that wasn't in the record in Ways? Okay, in Ways, there was almost nothing in the record. And the district court observed it wasn't even clear an equal protection violation was raised. But here, the material facts that are in the record that were not there is expert opinion from Dr. Schwartz that there's no anatomical difference between the nipples and areola of men and women. The expert opinion from Dr. Hebernek that nipples are not inherently sexual parts of the body for men or women, but that both men and women equally report arousal from nipple stimulation. Opinion from Dr. Clemente that the gender-based differential in the ordinance is predicated upon moral disapproval. So is it your position that any gender-based distinctions that a government might make would would fail an equal protection challenge? No. There's two parts to the, there's, I mean, a facial one like, like this, where it's on the face, or one that's ovidious like, like this. And some of the other evidence is that this ordinance decreases, discourages breastfeeding and shortens the duration of breastfeeding. Well, breastfeeding is an exception. That's not a very good argument for you, is it? Well, I mean, I think there's evidence in the record from an expert on breastfeeding who says that, that explains, that's Dr. Bloom, that the, despite having an exception for breastfeeding that is narrower than state law, that the ordinance, by its focus and criminalization of exposure to the nipple, discourages women from breastfeeding and causes breastfeeding to be of a shorter duration. But where a law either is a gender differential on its face or harmful, then it has to serve an important government interest. So would it, would a ruling in your favor, in essence, invalidate state's ability to, to make illegal touching of women's breasts without permission, or touching a child in, in, in those areas as well? So it would, in a, I mean the way you stated it would be gender neutral, touching a child, if you have to show an important government interest and that the discriminatory means are substantially related to the achievement of the objective. So in my plan, the Supreme Court recognized that when it came to statutory right, there is a, there is a difference between how that's experienced by men and women, and therefore the plurality of the Supreme Court said that men, that there is a substantial reason for the discriminatory treatment of men and women. Well, you know, some of those statutes specifically describe touching female breasts as itself violative, doesn't mention the same thing for, for males. Well, if, if someone challenged, challenged those, then there would need to be evidence about why the discriminatory means are substantially related to whatever the government interest is. And based on the evidence that's in this But that's not what this case is about, but, but it is a, it is a myth. What is this case about? Just give it to me in a couple of thoughts. Well, this case is about a gender-based differential that's on the face, that on the face of a law, that if a, that if a girl, also different than ways in that it applies to children, but if a girl or a woman is viewable from public. Has, has any U.S. Supreme Court opinion or United States Circuit Court of Appeals opinion made the holding that you're asking us to make? No. This has not been decided by the U.S. Supreme Court. It's under advisement now in the Tenth Circuit. For what, over a year now, I guess, or close to a year? Yes, it was argued last month. Well, it was argued last month, right? Last, no, a year ago, January. Oh, okay. So, it's been, it's been a little bit. What about state Supreme Courts? I know that New Hampshire just decided a case a few days ago. Are there other, are there any state Supreme Courts that have decided in your favor? New York. Okay. New Hampshire decided a case last Friday in a 3-2 decision that found that there was not, that it was not a gender-based classification at all. And, therefore, they didn't need to engage in the analysis of whether the discriminatory were related. Was the Ways case before or after Lawrence v. Texas? Do you know in terms of date, they're the same year? Yeah, it was, it came out about three or four days after Lawrence v. Texas. It was after Lawrence, the Ways case was. Thank you. So, in Hogan and in Virginia case, the Supreme Court has always said that we should review with suspicion gender-based differentials that rely on over-broad generalizations about talents, capacities, and preferences of men and women. And our view, and based on the evidence that's in this record, there are a couple at play here. The capacity of women to make an appropriate decision, which we trust men to do. It would be distracting if I was here making this argument without my chest covered. But Springfield trusts me to make that decision. It does not trust women and, in fact, makes it a crime punishable by going to jail. You might go to jail, too, if you came in here like that. I feel I could march down, I could march outside City Hall, you know, to my heart's content and not face any criminal sanction. But, you know, I have modesty, and women have modesty, too. And we trust men to do it, and we should trust women just the same. In our view, the other key facts that the district court did not consider, that should have been considered in deciding this case, is that there's no economic impact. Dr. Rogers did a study of the border cities, Pennsylvania and New York, when New York, through a court decision, allowed women to have the same rights as men when it comes to nipples. And there was no economic impact difference between the two states. And also, there are different cities, it's in the record, different cities of different sizes that have gender-neutral ordinances in Missouri. And these facts, if found to be true, undermine the assumptions of ways in previous cases that didn't include any evidence of this sort. And perhaps the best evidence, I think, that there's not a, that discriminatory means is not substantially related to the achievement of the government objection in preventing nudity is that the city is not considered, as other Missouri cities have, gender-neutral laws. The Equal Protection Clause doesn't care if you make nipples unlawful, but there's no reason why you can't make them unlawful for everyone. If they're offensive, that would not violate Equal Protection. I hate to ask you this at this stage of your argument, but I will. There is a second prong talking about constitutional. I think it's meant to refer to First Amendment, a second exception to this ordinance. How do you read that? Well, that was Does it already allow what you want? Well, the city interprets it as not allowing. Okay. The circumstances of this case originally, there was an earlier ordinance that, subject to a consent judgment, that was enacted, in our view, in retaliation for a protest. So that's where the constitutional language comes from. Thank you. That's what I believe. Sure. I'd like to reserve the remainder of my time. Sure. Thank you, Mr. Rother. Mr. Holman? In granting summary judgment in this case, the district court upheld well-established legal principles as it relates to gender-based distinctions within indecent exposure ordinances and statutes. Now, I think the district court correctly pointed out that Ways is absolutely the controlling decision in this case. And unlike my colleague, I do believe that in order to overturn the district court's decision in this case, you would have to expressly overrule Ways. I don't think there's any way to harmonize that case with overturning the district court's decision in this case. The Ways ordinance had an exception for children under 12, as I recall. Is that enough? I don't think that's enough because if you look at the equal protection analysis within the Ways decision, it makes no reference to the difference between adults and children. There's nothing from the text of that decision that indicates to me the age distinction is what caused that statute to be allowable under the equal protection clause. In fact, the Ways decision treated the equal protection challenge as somewhat obvious, to be honest. I mean, the biggest question in the Ways decision when you look at the equal protection analysis they engaged in is whether this even rose to the level of needing to apply intermediate scrutiny because they recognized a real physical distinction between male and female breasts, that the equal protection clause was not designed to prevent legislating when it comes to real physical differences. Ultimately, they didn't resolve that issue. They simply found that even if they did apply the intermediate standard from United States versus Virginia, that the law would survive that level of scrutiny, so there was no reason for further analysis. One of the problems I'm having with Ways is it is so perfunctory and so conclusory that we don't know really what happened in Ways. And so I'm just not sure, given that, you know, given opposing counsel's point about there's nothing much in the record, that there were nothing put forward by the plaintiffs in that case, how controlling Ways might be given that we just really didn't know what was going on there. Other than the statute, we do know what the statute said. It's very similar. Well, and that's where I think summary judgment is appropriate here because if you look at the body of material facts that are needed to decide this case, it's actually extremely narrow. I think looking not only at Ways but other cases interpreting this same issue, really all the court needs is the text of the ordinance that's being challenged and then the court's in a position to apply the law. And I think a case from not this circuit but from the Seventh Circuit that really puts an exclamation point on that is the Tagami versus the City of Chicago case from 2017 in the Seventh Circuit where they actually dismissed both a First Amendment challenge and an equal protection challenge against a similar ordinance on a motion to dismiss. And by allowing that to be dismissed on a motion to dismiss, I think they really highlighted the fact that all you need to do is look at this ordinance and decide does this meet constitutional scrutiny or not. In allowing that to be dismissed on motion to dismiss, the Seventh Circuit said, look, there is no body of facts that you can put forth here that would even give you an equal protection claim on this type of ordinance. And I think to the extent Ways is perfunctory, I think it doesn't come out to say it but I think it makes the same point is I don't think a deep factual dive is necessary. But under Ways, the state still has to justify the law. I mean, at least enough to allow us to do intermediate scrutiny. We're not going to imply like under rational basis review. We're not going to hypothesize an interest. And so I guess my question is don't we need to find an interest and what is that interest here? So Ways recognized a number of interests in regulating public nudity. And Ways cites to the secondary effects of public nudity. I think if we look again to the Tagami decision, Tagami is the first case, at least the first one I've seen, that comes out and says, look, regulating public nudity isn't a means to some other end. It's the end itself. That is the government interest that controls, at least according to the Seventh Circuit Tagami, is states have a legitimate public interest in regulating public nudity. And in this case, I don't think that's even really challenged. The appellants state in their own brief that everybody agrees states have the power to regulate public nudity and even outright ban public nudity. So I think in this case, there really is no dispute as to what the interest is. And the interest is regulation of public nudity. I get the public nudity point. But I guess on the secondary effects, one of the reasons why states and cities try to regulate nude dancing, for example, is because of the association with crime and things like that. Is there any association with crime? Or what are the secondary effects of this particular ban that you're trying to prevent? Yeah, so Waze cited to a number of them, and they had a full list. I think the important distinction between public nudity versus erotic dancing is erotic dancing is explicitly erotic in nature. I mean, it's right in the name of it. I think Waze recognizes, as you go through that list, and I have it in my notes here, Waze recognized that there are non-erotic reasons that you can want to regulate public nudity as well. The list they cite include protecting public order, morality, health, safety, and well-being of the general populace. And I think that gets to some of the expert testimony that I don't agree is material, talks about there's nothing inherently erotic about female nipples as opposed to male nipples, but I don't think allowing cities to regulate public nudity requires the court to find any kind of erotic messaging or any kind of erotic purposes. Well, just to follow up, opposing counsel cited a number of different experts, and what I'm wondering is did the state here just rely on Waze and think Waze is controlling, or did the state come forward with its own evidence, either in the form of findings that support the ordinance or some sort of expert testimony of its own, or was it really nothing you can come up with is sufficient on the other side, and that's the way the case was litigated? No, my position on the expert testimony is I don't believe it's material. I don't think it's needed or even appropriate for summary judgment, and if the case were to go to trial, I don't think it's appropriate expert testimony either. If you look at what the experts actually found, that is really legal opinion couched in the terms of an expert report. Essentially what the experts did was they said, you know, some don't even cite to the ordinance themselves or even indicate what ordinance they looked at. The experts essentially said, looking at the history of this, looking at what the law is, we don't think this can ever survive equal protection analysis, but that's not the province of expert testimony, and it's not the province of experts. I mean, that's the role of the court, and again, I think this is why this is such a good case for summary judgment is because the body of facts you need is very narrow. The court only needs the ordinance. To close the loop, there was no independent, there's no findings or no evidence that was put forward by the state in support of the ordinance. Okay, I just want to be clear about that. Yeah, yeah, that is correct. The city did not seek any and did not put any forward. Here's another clarification. This is a facial challenge, right? Yes. On an as-applied challenge, right? Correct. Okay. Your second exception protects constitutionally protected activity, right? That's correct. Do you have the ordinance handy? I do. I don't. It's in my table. Yeah, get it, please. Can you read the words of the second exception? It wasn't in either of your briefs, either. I just looked. What's the second exception say? The second exception reads, and I quote, this section shall not regulate nudity when the conduct of being nude cannot constitutionally be prohibited by this section because it is otherwise protected by the United States Constitution. Now, you're the city attorney. That's correct. Doesn't that mean that their facial challenge is obviously bad because their challenge is defeated by your exception? You didn't argue that, did you? No, I didn't argue that. Well, what's the city attorney's position? Well, I think that section was designed to be considered in more of an as-applied challenge. And the reason we don't have that here is because no one's ever been prosecuted under this ordinance. Does that answer your question? No, not really. So you say it doesn't apply, even if it's a facial challenge, we don't look at what's on the face of the ordinance. I think that's what you're telling me. And I may not be understanding your question. Well, it says anything that's constitutionally protected, except the ordinance doesn't apply to. Correct. So if it's constitutionally protected to show your upper body, anybody, then the ordinance doesn't prohibit it. So I guess to your point, and this is where me and opposing counsel disagree, I do believe the city's position is that it's not an equal protection violation. And so if the court were to find it. It says constitution equal protection clause of the constitution, right? Correct. Yeah, go ahead. Okay. The final point I'd like to make is. There's actually two points I'd like to make based on, on argument the council made first is in their brief and in their argument, they reference the fact that other cities have managed to accomplish the same ends without a gender based classification in their ordinance. Equal protection analysis does not require the courts to consider a hypothetical ordinance, but only requires that the court consider whether the legislative decision that was made by the governing body was within the constitutional limits. There's no case that describes requiring the court to compare the enacted ordinance versus a hypothetical ordinance. And I would ask this court not to go that far. I think again, the equal protection analysis is just the two prong. Is there a legitimate state interest here? Was there any official fact finding done when the ordinance was passed to justify its enactment? And I apologize. I was not employed by the city at that time. And I'm not equipped to answer that question. If I understand what you're asking correctly. I don't know what legislative process they went through when they chose to look at the face of it. Yes. Yes. How many times has it been enacted? There've been three total, I believe. Yeah. Yeah. There've been three total. Finally, I think it's important to discuss the Morales-Santana case. Appellants seem to think that that somehow transformed the law as it relates to equal protection challenges. I do believe that to accept appellant's argument, you would have to declare that no gender-based classification can survive equal protection analysis. If the Supreme Court wanted to make that pronouncement, Morales-Santana gave them an opportunity to do that. And they chose not to. The court applied existing equal protection framework when testing the law at issue in the Morales-Santana case. Ultimately, they struck that down because they found that underlying that law was a case where unwed fathers were invariably less qualified and less entitled than mothers to take responsibility for marital children. And it was based on that stereotype that the law in Morales-Santana was struck down. Appellants look at that case and argue that that somehow transforms the way we have to look at all our past indecent exposure ordinance cases. And I just don't see that from that case. Ultimately, Morales-Santana applied the exact same test that was applied by the district court here. And really, the case that articulates that test is United States v. Virginia. And it's simply, is there a legitimate state interest here and is the classification employed substantially related to the achievement of that objective? I think if the Supreme Court wanted to go further, they certainly had an opportunity to do it. They declined to do that. I simply see nothing that's come out of the Supreme Court since Waze was decided that would urge this court to overturn its decision in Waze. Thank you. Mr. Rothert, your rebuttal. This case is really about Rule 56 more than anything else. And about considering the facts and the record. Tagami, the majority opinion in Tagami considered the facts as pled. Like Waze did not say that you could never, ever prove an equal protection claim. They held that based on the facts before them, there was no equal protection claim. On the procedural posture, one of the things I didn't appreciate until the city came up was the fact that this is a facial challenge and it's not a first amendment challenge, so we're not in over-breath land. So it's equal protection, which means you got to meet the Salerno standard, the no set of circumstances. And it's not hard here to hypothesize circumstances. I think where even under your argument, it would be a constitutional, for example, somebody dancing in an erotic fashion in the middle of a city Plaza, an open view, you know, with, with, with topless. And if that can be regulated, I'm not sure that your facial challenge could possibly succeed. I, I, I don't have the complaint in front of me, but I believe it was a facial and as applied, but we're not the, the problem, whether it's facial or otherwise is the second prong of equal protection claim that there has to be a close fit between the, the discrimination, the different treatment of men and women and the end. So we're, we're not claiming there's a constitutional right to nudity. And what the city hasn't shown is why it has to, why it has to treat men and women differently to get to that important government interest. And Tagami doesn't really grapple with, doesn't grapple as the dissent points out, doesn't grapple with that, that second prong of the equal protection claim. And so there are no set of circumstances under which the city can show that it's necessary to treat men and women differently in this respect, in order to achieve their government interests. So we'd ask that the grand summary judgment be reversed and the case be remanded for the proceedings. Thank you. Thank you, Mr. Rother. Thank you also, Mr. Holman court appreciates both councils presence in the argument that you provided to the court today, the briefing that you've provided to us. We'll take the case under advisement and do the best we can. Thank you.